**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, Eighth Floor
New York, New York 10011
Tel.: (212) 465-1188
Fax: (212) 465-1181
*Attorneys for Plaintiff,*
*FLSA Collective Plaintiffs,*
*and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

DELFINO DE LOS SANTOS, *on behalf of himself,*
*FLSA Collective Plaintiffs, and the Class*,

                         Plaintiff,

          v.

86TH CPW INC.
      d/b/a 86TH CORNER WINE & LIQUOR CO,
536 J AND J CORPORATION
      f/d/b/a 86TH CORNER WINE & LIQUOR CO,
HOWARD SHIM, and
BRIAN PARK

                     Defendants.

---

Case No.:

**CLASS AND COLLECTIVE**
**ACTION COMPLAINT**

Plaintiff, DELFINO DE LOS SANTOS ("Plaintiff"), on behalf of himself and others similarly situated, by and through his undersigned attorneys, hereby files this Class and Collective Action Complaint against Defendants, 536 J AND J CORPORATION f/d/b/a 86TH CORNER WINE & LIQUOR CO, 86th CPW INC. d/b/a 86th CORNER WINE & LIQUOR CO, (the "Corporate Defendants"), BRIAN PARK, and HOWARD SHIM (the "Individual Defendants" and together with the Corporate Defendant, the "Defendants") and states as follows:

1

## INTRODUCTION

1.      Plaintiff alleges, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), that he and others similarly situated are entitled to recover from Defendants: (1) unpaid overtime wages due to fixed salary compensation; (2) unpaid wages, including overtime, due to timeshaving; (3) unpaid wages, including overtime, due to improper rounding; (4) liquidated damages; and (5) attorneys' fees and costs.

2.      Plaintiff further alleges that, pursuant to the New York Labor Law ("NYLL"), he and others similarly situated are entitled to recover from Defendants: (1) unpaid minimum wages; (2) unpaid overtime wages due to fixed salary compensation; (3) unpaid wages, including overtime, due to timeshaving; (4) unpaid wages, including overtime, due to improper rounding; (5) unpaid spread of hours; (6) statutory penalties; (7) liquidated damages; and (8) attorneys' fees and costs.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over this controversy pursuant to 29 U.S.C. § 216(b), 28 U.S.C. §§ 1331, 1337 and 1343, and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

4.      Venue is proper in the Southern District pursuant to 28 U.S.C. § 1391.

## PARTIES

5.      Plaintiff DELFINO DE LOS SANTOS is a resident of New York County, New York.

6.      Corporate Defendant 86TH CPW INC. is a domestic business corporation organized under the laws of the State of New York, with its principal place of business and address for service of process both located at 536 Columbus Avenue, New York, NY 10024.

7.      Corporate Defendant 536 J AND J CORPORATION is a domestic business

corporation organized under the laws of the State of New York, with its former principal place and address for service of process both located at 536 Columbus Avenue, New York, NY 10024.

8.    Individual Defendant HOWARD SHIM is the owner and operator of Corporate Defendant 536 J AND J CORPORATION. Individual Defendant HOWARD SHIM exercised control over the employment terms and conditions of Plaintiff, FLSA Collective Plaintiffs and Class Members during their employments with Corporate Defendant 536 J AND J CORPORATION. Individual Defendant HOWARD SHIM exercised— and also delegated to managers and supervisors— the power to the power to (i) fire and hire, (ii) determine rate and method of pay, (iii) determine work schedules and (iv) otherwise affect the quality of employment of Plaintiff, FLSA Collective Plaintiffs and Class Members during their employments with Corporate Defendant 536 J AND J CORPORATION. At all relevant times, employees could complain to Individual Defendant HOWARD SHIM directly regarding any of the terms of their employments with Corporate Defendant 536 J AND J CORPORATION, and Individual Defendant HOWARD SHIM would have the authority to effect any changes to the quality and terms of employees' employments. At all relevant times, Individual Defendant HOWARD SHIM directly reprimanded any employee who did not perform his duties correctly. At all relevant times, Individual Defendant HOWARD SHIM exercised functional control over the business and financial operations of Corporate Defendant 536 J AND J CORPORATION. At all relevant times, Individual Defendant HOWARD SHIM had the power and authority to supervise and control supervisors of Plaintiff, FLSA Collective Plaintiffs and Class Members and could reprimand employees.

9.    Individual Defendant BRIAN PARK is the owner and operator of Corporate Defendant 86TH CPW INC. Individual Defendant BRIAN PARK exercised control over the

employment terms and conditions of Plaintiff, FLSA Collective Plaintiffs and Class Members during their employments with Corporate Defendant 86TH CPW INC. Individual Defendant BRIAN PARK exercised— and also delegated to managers and supervisors— the power to (i) fire and hire, (ii) determine rate and method of pay, (iii) determine work schedules and (iv) otherwise affect the quality of employment of Plaintiff, FLSA Collective Plaintiffs and Class Members during their employments with Corporate Defendant 86TH CPW INC. At all relevant times, employees could complain to Individual Defendant BRIAN PARK directly regarding any of the terms of their employments with Corporate Defendant 86TH CPW INC., and Individual Defendant BRIAN PARK would have the authority to effect any changes to the quality and terms of employees' employments. At all relevant times, Individual Defendant BRIAN PARK directly reprimanded any employee who did not perform his duties correctly. At all relevant times, Individual Defendant BRIAN PARK exercised functional control over the business and financial operations of Corporate Defendant 86TH CPW INC. At all relevant times, Individual Defendant BRIAN PARK had the power and authority to supervise and control supervisors of Plaintiff, FLSA Collective Plaintiffs and Class Members and could reprimand employees.

10.     Individual Defendant HOWARD SHIM was a founder and original owner of a wine and liquor store located at 536 Columbus Avenue, New York, NY 10024 ("86th Corner Wine & Liquor Co"), which he opened sometime around 1992 to 1993. Individual Defendant HOWARD SHIM operated the store through Corporate Defendant 536 J AND J CORPORATION (together, the "Predecessor Defendants"). In or around August 2023, Predecessor Defendants sold the business to Individual Defendant BRIAN PARK, who began, and currently is, operating the business through Corporate Defendant 86TH CPW INC (together, the "Successor Defendants").

11.     The Successor Defendants are appropriately named in this Complaint as they are the successors in interest of the Predecessor Defendants. In order to determine if a business is liable as a successor to a separate purchase in wage and hour claims, courts in this District regularly adopt the "substantial continuity" test. *See* Yong Biao Ji v. New Aily Foot Relax Station Inc., 2023 U.S. Dist. LEXIS 88213.

12.     In order to decide whether a business is a substantial continuation of its predecessor, courts look to nine factors: "(1) whether the successor company had notice of the charge or pending lawsuit prior to acquiring the business or assets of the predecessor; (2) the ability of the predecessor to apply relief; (3) whether there has been a substantial continuity of business operations; (4) whether the new employer uses the same plant; (5) whether it uses the same or substantially the same work force; (6) whether it uses the same or substantially the same supervisory personnel; (7) whether the same jobs exist under substantially the same working conditions; (8) whether it uses the same machinery, equipment, and methods of production; and (9) whether it produces the same product." *Id* at *9-10.

13.     Although no one factor is considered controlling, nor do all criteria need to be met in order to establish successor liability, the first factor is generally considered to be "indispensable". *See Bautista v. Beyond Thai Kitchen*, 2015 U.S. Dist. LEXIS 124454, 2015 WL 5459737, at *5; *see also Battino v. Cornelia Fifth Ave., LLC*, 861 F. Supp. 2d 392. Here, almost all of the above requirements, including the first, are met.

14.     Although there was no specific notice of liability at the time of the purchase, as Plaintiff's lawsuit was not yet filed, Successor Defendants had constructive notice as to Predecessor Defendants' violations of the FLSA and NYLL and the accompanying potential liability. Successors may be held liable for Predecessors claims absent an explicit notice if

sufficient information existed that any reasonable buyer exercising due diligence should have discovered. *See Battino*, 861 F. Supp. 2d 392, 405-407 (S.D.N.Y. 2012) (finding that the notice requirement may be satisfied by knowledge of wage violations). Here, Successor Defendants acquired all assets of their predecessors, including payroll and employment records. Since Plaintiff, FLSA Collective Plaintiffs, and Class Members were paid in cash with no official time or pay records, even the most cursory inspection of the sellers' assets by the purchaser should have raised serious concerns and prompted a deeper investigation. The lack of pay, time, and tax records for employees is not only an indication of the existence of potential liabilities, but is, in and of itself, a liability as it is a violation of numerous statutes. Furthermore, the Successor Defendants were aware of at least the pay rates of employees as they retained the majority of them in their original positions and at the same rate of pay following the sale. Such a policy would have been impossible without knowledge of what they were paid prior to the sale. The lack of wage records constructively put Successor Defendants on notice with regards to the failure of the predecessor to live up to the responsibilities of the FLSA.

15.    As to the second criterion, while Predecessor Defendant 536 J AND J CORPORATION continues to exist on paper, it is functionally non-extant, as it was shorn of all of its assets when it was sold to the Successor Defendants. With that being the case, the Predecessor Defendants are unable to provide relief as they lack any assets against which Plaintiff might be able to collect judgement.

16.    The Successor Defendants meet the third and fourth criteria as the business continued to operate uninterrupted, with the same name and location. *See* **Exhibit A,** images of the establishment before and after the change in ownership. Successor Defendants operated the business as "86th Corner Wine and Liquor," the same name as under the Predecessor Defendants,

at the same location. There was no pause in operations, or meaningful change to the establishment's physical characteristics and operations. The Successor Defendants merely accepted ownership of the business and continued to let it run essentially unchanged.

17.     The fifth, six, and seventh criteria are met since the Successor Defendants retained almost the entire non-owner workforce that was employed prior to the sale. Employees retained their same positions, schedules, and rates of pay under the new owners.

18.     Finally, the eighth and ninth criteria are met since the business continued unchanged other than the succession in ownership. The business sells the same products as it did before the sale, a range of wines and spirits, and uses the same methods and equipment to do so.

19.     The Successor Defendants are clearly appropriately named, meeting all but one of the determining factors. As such, they are liable to Plaintiff, FLSA Collective Plaintiffs, and Class Members for any and all violations of workplace, employment, and labor laws, including those detailed herein.

20.     At all times of their ownership and operational control, Predecessor Defendants operated their business with multiple policies which all resulted in a failure to compensate employees all their properly owed wages. When the Successor Defendants took over the business, they continued operating the business with the Predecessor Defendants' prevailing policies which continued to result in a failure to compensate employees their properly owed wages.

21.     At all relevant times, each Corporate Defendant had gross annual revenues in excess of $500,000.00 and engaged in interstate commerce. Therefore, at all relevant times, each Corporate Defendant was and continues to be an "enterprise engaged in commerce" within the meaning of the FLSA, the NYLL, and all regulations thereunder.

22.     At all relevant times, each Corporate Defendant engaged in interstate commerce. At all relevant times, Corporate Defendants sold wines, liquors, beers, and spirits which were imported into New York, purchased by Defendants from vendors located both within and outside of New York State. At all relevant times, Defendants required Plaintiff and other employees to sell these imported goods. Additionally, Defendants required Plaintiff and other employees to clean and mop their store using cleaning products shipped from outside New York State.

23.     At all relevant times, the work performed by Plaintiff, FLSA Collective Plaintiffs and Class Members was directly essential to the business operated by Defendants.

24.     At all relevant times, Defendants employed at least 40 employees as defined under the NYLL.

25.     At all relevant times, Defendants were employers of Plaintiff and the relevant FLSA Collective Plaintiffs and Class Members within the meaning of NYLL §§ 2 and 651.

26.     At all relevant times, Plaintiff, FLSA Collective Plaintiffs, and Class Members were employees of the appropriate Defendants, within the meaning of NYLL §§ 2 and 651.

## FLSA COLLECTIVE ACTION ALLEGATIONS

27.     Plaintiff brings claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all non-exempt employees employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein ("FLSA Collective Plaintiffs").

28.     At all relevant times, Plaintiff and FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay them all wages

owed, including overtime compensation at the rate of one and one half times the regular hourly rate for work in excess of forty (40) hours per workweek. The claims of Plaintiff stated herein are essentially the same as those of FLSA Collective Plaintiffs.

29.    The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to § 16(b) of the FLSA, 29 U.S.C. § 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided to the FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## RULE 23 CLASS ALLEGATIONS

30.    Plaintiff brings claims for relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all non-exempt employees employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein (the "Class" or "Class Members").

31.    The Class Members are readily ascertainable. The number and identity of the Class Members are determinable from the records of Defendants. The hours assigned and worked, the position held, and rates of pay for each Class Member are also determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

32.    The proposed Class is so numerous that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, as the facts on which the calculation of that number

rests are presently within the sole control of Defendants, there is no doubt that there are more than forty (40) members of the Class.

33.     Plaintiff's claims are typical of those claims, which could be alleged by any member of the Class, and the relief sought is typical of the relief, which would be sought by each member of the Class in separate actions. All the Class Members were subject to the same corporate practices of Defendants, as alleged herein, of failing to (i) pay minimum wages, (ii) pay overtime compensation, (iii) pay all wages owed, including overtime, due to timeshaving, (iv) pay all wages owed, including overtime, due to improper rounding, (v) compensate spread of hours premiums, (vi) provide proper wage statements per requirements of the New York Labor Law, and (vii) provide proper wage and hour notices per requirements of the New York Labor Law. Defendants' corporate-wide policies and practices affected all Class Members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class Member. Plaintiff and other Class Members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

34.     Plaintiff is able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

35.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendant. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the

unnecessary duplication of efforts and expense that numerous individual actions engender. Because losses, injuries, and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendant and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

36.    Defendants and other employers throughout the state violate the New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

37.    There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

a)   Whether Defendants employed Plaintiff and Class Members within the meaning of NYLL;

b)   What are and were the policies, practices, programs, procedures, protocols and plans of Defendants regarding the types of work and labor for which Defendants did not pay the Class Members properly;

c)   At what common rate, or rates subject to common methods of calculation, was and are Defendants required to pay Plaintiff and Class Members for their work;

d)   Whether Defendants properly notified Plaintiff and Class Members of their regular hourly rate and overtime rate;

e)   Whether Defendants paid Plaintiff and Class Members at the prevailing New York State minimum wage rates;

f)   Whether Defendants paid Plaintiff and Class Members the proper overtime compensation at the premium rate of one and one-half times the regular rate of pay, under NYLL;

g)   Whether Defendants paid Plaintiff and Class Members their owed spread of hours premiums for hours worked over ten in a single day;

h)   Whether Defendants paid Plaintiff and Class Members their wages owed for all hours worked;

i)   Whether Defendants rounded Plaintiff's and Class Members hours worked, and whether such rounding was to their detriment;

j)   Whether Defendants provided proper wage statements to Plaintiff and Class Members per requirements of NYLL; and

k)   Whether Defendants provided proper wage and hour notices to Plaintiff and Class Members per requirements of NYLL.

## **STATEMENT OF FACTS**

i.   *Plaintiff's Employment Background*

38.   In or around 1992, Predecessor Defendants hired Plaintiff to work as a Counter Associate for their liquor store located at 536 Columbus Avenue, New York, NY 10024. Plaintiff's employment was transferred to the Successor Defendants in or around November 2023, when they purchased the business from Predecessor Defendants. Plaintiff's employment with Successor Defendants terminated in or around January 2024.

39.   From the beginning of Plaintiff's employment until around March 2020, Predecessor Defendants scheduled Plaintiff to work six (6) days per week, from 11:00 a.m. to 11:00 p.m., for a total of seventy-two (72) hours per week. From around March 2020 until the end of his employment, Defendants scheduled Plaintiff to work six (6) days per week, for seven (7) to nine (9) hours per day, for a total of forty-two (42) to fifty-four (54) hours per week. At all relevant times, Plaintiff worked without any meal breaks. Predecessor Defendants required the relevant FLSA Collective Plaintiffs and Class Members to work similar amounts of hours.

40.   From the beginning of his employment until around January 2019, Predecessor Defendants compensated Plaintiff at a fixed salary of $522.25 per week, regardless of the actual amount of hours Plaintiff worked. There was never any understanding between Plaintiff and Predecessor Defendants that this fixed salary was ever intended to cover any overtime hours Plaintiff worked. Predecessor Defendants similarly paid the relevant FLSA Collective Plaintiffs and Class Members at similar fixed salaries.

41.     From January 2019 to January 2020, Predecessor Defendants compensated Plaintiff at an hourly rate of $13.50 per hour. From January 2020 until the end of Plaintiff's employment, Defendants compensated Plaintiff at an hourly rate of $15.00 per hour.

42.     At all relevant times, Defendants compensated Plaintiff in cash every week, without proper paystubs or wage statements. FLSA Collective Plaintiffs and Class Members were similarly compensated in cash every week without proper paystubs or wage statements.

ii.     _Plaintiff's Unpaid Minimum Wages Claim_

*43*.     Defendants knowingly and willfully operated their business with a policy of failing to pay Plaintiff and Class Members at the prevailing New York State minimum wage, in violation of the NYLL.

44.     From the beginning of the relevant period until January 2019, as Plaintiff always worked more than forty (40) hours per week with a fixed salary of $522.25 during this time period, Predecessor Defendants therefore paid Plaintiff below the prevailing New York State minimum wage. Following Defendants' switch to an hourly pay scheme, for the year of 2019, Predecessor Defendants continued to improperly pay Plaintiff at the rate of $13.50 per hour, below the 2019 New York State minimum wage rate of $15.00 per hour. *See* **Exhibit B**. Predecessor Defendants similarly paid Class Members below the prevailing New York State minimum wage rates due to improper fixed rate salary compensation, in violation of the NYLL.

45.     Defendants' awareness and willfulness is obvious based on the fact that Defendants set Plaintiff's and Class Members' weekly schedules and compensation rates to amounts that would never result in Plaintiff and Class Members achieving the minimum wage.

iii.   *Plaintiff's Unpaid Overtime Wages Claim*

46.     At all relevant times, Defendants failed to compensate Plaintiff at the statutory rate of time and one-half the regular rate for all hours worked in excess of forty (40) hours each week, in violation of the FLSA and the NYLL. FLSA Collective Plaintiffs and Class Members were also not compensated for their overtime hours at the proper overtime rates.

47.     Prior to 2019, Predecessor Defendants paid Plaintiff with a fixed salary. However, there was never any agreement that Plaintiff's fixed salary was intended to cover the overtime hours worked in excess of forty (40) each week. Therefore, Predecessor Defendants failed to compensate Plaintiff for all hours he worked in excess of forty (40) hours per workweek, due to a fixed salary. After 2019, Predecessor Defendants and Successor Defendants compensated Plaintiff at a regular rate of $13.50 per hour and an overtime rate of $18.50 per hour. However, the 2019 New York State minimum wage rate was $15.00 per hour, with an overtime rate of $22.50 per hour. Therefore, Predecessor Defendants unlawfully compensated Plaintiff for his overtime hours at the overtime rate of $18.50, which is less than one and one-half times their regular rate of $13.50, and also below the statutory minimum overtime rate. Similarly, FLSA Collective Plaintiffs and Class Members never had any agreement with Defendants that their fixed salaries would cover their overtime hours and were subjected to Defendants' practices of failing to compensate employees overtime premiums at one and one-half times their proper regular rate.

48.     Defendants' awareness and willfulness is obvious based on the fact that Defendants (i) scheduled and required Plaintiff and Class Members to work over forty (40) hours per week, and (ii) set Plaintiff's and Class Members' pay to either fixed-rate salaries without compensating their overtime hours or improper overtime rates.

*iv.*     *Plaintiff's Timeshaving Claim*

49.     At all relevant times, Defendants failed to compensate Plaintiff and Class Members wages for all hours worked due to Defendants' policy of timeshaving, in violation of the FLSA and the NYLL.

50.     At all relevant times, Defendants did not utilize a timeclock system to record employees' hours worked. Instead, employees' hours worked were manually recorded and calculated by Defendants. However, Defendants deducted 30 minutes from Plaintiff's and Class Members' wages for every shift they worked, which were intended to cover meal break periods. However, Defendants' never provided Plaintiff and Class Members with any meal breaks.

51.     For example, for the week ending on payday January 9, 2019, Plaintiff worked 46 hours across 6 days. However, Predecessor Defendants deducted 30 minutes for each of these 6 days, resulting in a deduction of 3 hours from Plaintiff's wages, labeled as "food". *See* **Exhibit C**, copy of Predecessor Defendants' handwritten time records. Defendants made the same three-hour "food" deduction from Plaintiff's wages on another workweek in 2020. *Id.* As a result, Plaintiff was not paid three hours of overtime for these two workweeks. Additionally, Plaintiff's time records show that Plaintiff never clocked out for any meal breaks. *See* **Exhibit D**.

52.     At all relevant times, Defendants similarly deducted thirty (30) minutes for every shift worked from the relevant FLSA Collective Plaintiffs' and Class Members' wages.

53.     Further, because Plaintiff was always scheduled by Defendants to work over forty (40) hours per week and six (6) days per week, Defendants' timeshaving always resulted in three (3) unpaid overtime hours for Plaintiff every week. Defendants similarly failed to compensate overtime to the relevant FLSA Collective Plaintiffs and Class Members due to their policy of timeshaving.

54.     At all relevant times, Defendants knowingly and willfully operated their business with a policy of timeshaving Plaintiff's and Class Members' wages, in violation of the FLSA and the NYLL. Defendants awareness and willfulness is obvious based on the fact that Defendants (i) scheduled and required Plaintiff and Class Members to work over forty (40) hours per week, and (ii) set Plaintiff's and Class Members' pay to fixed-rate salaries that compensated their overtime hours at the same rate as their regular hours.

    v.    *Plaintiff's Improper Rounding Claim*

55.     At all relevant times, Defendants failed to compensate Plaintiff for all hours worked, due to Defendants' policy of improper rounding, in violation of the FLSA and the NYLL.

56.     As factually described above, during the relevant times, Defendants did not utilize a time clock, and instead manually recorded employees' hours worked. However, Defendants rounded down employees' hours worked. *See* **Exhibit C** – Predecessor Defendants' rounded time records. Similarly, FLSA Collective Plaintiffs and Class Members were subjected to Defendants' unlawful rounding to their detriment. Defendants' awareness and willfulness is obvious based on the fact that Defendants were the ones to manually record employees' hours worked.

    vi.    *Plaintiff's Unpaid Spread of Hours Claim*

57.     At all relevant times, Defendants failed to compensate Plaintiff and Class Members with spread of hours premiums for all days worked with a spread of ten or more hours, in violation of the NYLL.

58.     As factually described above, Plaintiff was required by Defendants to work up to twelve (12) hours every day. However, Defendants always failed to compensate Plaintiff any spread of hours premiums for these workdays.

59.     Defendants similarly required Class Members to work days with a spread of ten or more hours and failed to pay them any spread of hours premiums for such days.

60.     Defendants knowingly and willfully operated their business with a policy of not compensating Plaintiff and Class Members their owed spread of hours premiums, in violation of the NYLL.

   *vii.     Plaintiff's WTPA Violations Claims*

61.     At all relevant times, Plaintiff and Class Members never received a wage notice from Defendants. They also did not receive any wage statements from Defendants.

62.     In violation of the Wage Theft Protection Act ("WTPA")—incorporated into NYLL—Defendants knowingly and willfully operated their business with a policy of not providing wage notices to Plaintiff and Class Members at the beginning of their employment with Defendants.

63.     Defendants further violated the WTPA by failing to provide Plaintiff and Class Members with any wage statements.

64.     In failing to provide any wage statements and notices, Defendants have failed to comply with the law in a manner that entails a concrete harm to an interest identified by the New York State legislature. As one Court observed:

> Here, Plaintiffs allege that Defendants failed to furnish them with proper wage notices and statements, as required by NYLL §§ 195(1) and 195(3). These provisions were enacted as part of New York's Wage Theft Prevention Act ("WTPA"), N.Y. Lab. Law § 195, which sought "to expand the rights of employees to seek civil and criminal avenues of remedy for their employers failing to follow labor law appropriately and the specifications therein." N.Y. Spons. Mem., 2010 S.B. 8380. More specifically, the New York State Assembly passed the WTPA to address studies showing that a large number of employees were not being paid the wages owed to them, and that many employers were not adequately informing their employees of their wages and how they are calculated in language the employees could understand. *Id.* The New York State Assembly opined that existing penalties did not adequately deter employers from paying less than the wages owed,

and stated that the WTPA would dramatically change this by increasing penalties
for violating employees' rights. *Id.*

*Imbarrato v. Banta Mgmt. Servs*., 2020 U.S. Dist. LEXIS 49740, *21-22 (S.D.N.Y. March 20,
2020)

65.    Here, Defendants' failure goes beyond generating a risk of harm to Plaintiff and

Class Members. Defendants' conduct actually harmed Plaintiff and Class Members. Defendants'

failure to provide wage notices and paystubs listing all hours actually worked and rates of pay,

including overtime hours and overtime rates, deprived employees of the ability to contest the pay

provided by Defendants, allowed Defendants to hide their wrong-doings, and necessitated the

current litigation to vindicate Plaintiff's and Class Members' rights. This conduct ensured

Defendants' ability to further delay providing proper compensation to low wage earners entitled

to protection under federal and state law. Defendants' failure to provide wage notices and wage

statements to employees allowed Defendants to hide their responsibility and deprive employees of

timely compensation.

66.    Had Defendants provided any wage statements to Plaintiff and Class Members

which accurately listed the total number of hours Plaintiff and Class Members actually worked

and their proper pay rates, as required by law, Defendants would have had to either (a) increase

employees' wages to correspond to the hours they actually worked or (b) forthrightly

acknowledge, by way of the wage statement, that the employee's wages did *not* correspond to the

hours the employees actually worked. Either possibility would have allowed Plaintiff and Class

Members to vindicate their rights under the NYLL. The deprivation of these possibilities therefore

constitutes an injury.

67.    The failure to provide any wage notices and wage statements continues to result in delayed payment of all proper wages owed to Plaintiff and Class Members. This delayed payment caused Plaintiff and Class Members to struggle to pay bills and other debts.

68.    The direct effect of understating the number of hours an employee worked is to reduce the wages that employees are listed as having earned on their wage statements. The direct effect of this, in turn, is to reduce the employee earnings that the employer later reports to the IRS through the employee's W-2 form, as such information is derived from the information on employees' wage statements. *See Mills v. Mills*, 2021 Minn. Dist. LEXIS 200, *5 (Minn. Dist. Ct., Anoka County, Tenth Judicial District May 20, 2021) ("Petitioner's gross annual income, based on her 2020 W-2 and paystub dated 12/24/20, is $130,321.30"); T.F. v. N.F., 820 N.Y.S.2d 846, 846 (Sup. Ct., Suffolk Cty., June 22, 2006) ("In 2005 the plaintiff earned $ 133,086 as reflected on his final year paystub and W-2").[1]

69.    The effect of reporting reduced wages on an employees' W-2 is, in turn, to reduce the amount of social security benefits available to the employee, as an employee's entitlement to benefits reflects how much money he or she is reported as having contributed to the social security system. *See McGauran v. Soc. Sec. Comm'n*, 2001 U.S. Dist. LEXIS 3187, *7 (N.D. Cal. March 19, 2001) ("Social security benefits are based upon the worker's earnings as reported to the [SSA] . . . [and] the worker's earnings are used to determine insured status for entitlement to retirement

---

[1] It is true that the wages reported on W-2 forms are not always precisely identical to those listed on an employees' last paystub for the year. One reason for is, as the IRS explains, that "W-2 wages include: (i) the total amount of wages as defined in section 3401(a); (ii) the total amount of elective deferrals (within the meaning of section 402(g)(3)); (iii) the compensation deferred under section 457; and (iv) the amount of designated Roth contributions (as defined in section 402A)." https://www.irs.gov/pub/irs-drop/rp-19-11.pdf. However, the possibility, that wages listed on a W-2 might be affected by such considerations does not change the fact that the base wages on the W-2 are derived from paystubs. The paystub processing service *realcheckstubs* explains:  "A pay stub contains crucial information that assists in calculating W2 wages. Paystub provides gross wages, deductions, taxes withheld, and other income-related data. Individuals gather the necessary figures required for accurate W2 calculation by referring to the pay stub." https://www.realcheckstubs.com/blog/paystubs/6-steps-how-to-calculate-w-2-wages-from-paystub.

and to calculate cash benefit rates." (quoting Social Security Administration, Handbook § 1400 (1997)); *Coward v. Zurich Am. Ins. Co.*, 2011 U.S. Dist. LEXIS 74543, *3 (N.D. Ill. July 8, 2011) ("Under the Social Security statute, entitlement depends on 'the total of the wages paid . . . to an individual in a calendar year.'") (quoting 42 U.S.C. § 413(a)(2)(A)(ii)).

70.     "In the wake of the Supreme Court's decision in *TransUnion*, courts in this Circuit have held that plaintiffs lack standing to bring wage notice and statement claims under the NYLL absent any concrete, downstream consequences of the recordkeeping violation." *Chen v. Lilis 200 W. 57th Corp.*, 2023 U.S. Dist. LEXIS 38163, *18 (S.D.N.Y. Mar. 7, 2023). "On the other hand, 'allegations' that go 'beyond asserting a bare statutory violation and sufficiently allege concrete harm' resulting from 'the underpayment of wages' pass muster because 'monetary injury is a concrete harm sufficient for purposes of Article III standing.'" *Thompson v. Elev8 Ctr. N.Y.*, LLC, 2023 U.S. Dist. LEXIS 122504, *21 (S.D.N.Y. July 17, 2023) (quoting *Mateer v. Peloton Interactive, Inc.*, 2022 U.S. Dist. LEXIS 125017, *4 (S.D.N.Y. July 14, 2022)).

71.     Here, it is clear that Defendants' failure to provide Plaintiff and Class Members with any wage statements entailed "concrete, downstream consequences" involving monetary injury. Had the number of hours been accurately reported for a given pay period, Defendants would have correspondingly increased the wages due for that period, which in turn would have been reflected in the W-2s that Defendants were supposed to submit to the IRS on behalf of Plaintiff and Class Members. That, in turn, would have increased Plaintiff's and Class Members' entitlement to social security benefits. Because the inaccuracy prevented this outcome, it constitutes an injury sufficient to provide Plaintiff with Article III standing.

72.     Courts agree that the misreporting of wages constitutes a concrete injury cognizable under Article III:

The Seventh Circuit in *Calderon* squarely addressed FICA standing. The plaintiffs in *Calderon* were former employees alleging the employer failed to pay their FICA taxes. 999 F.2d at 1105-06. The Seventh Circuit found that the plaintiffs lacked standing to compel the employer to pay their FICA taxes because "[b]enefits do not. . . depend on whether the employer actually paid the taxes." *Id.* at 1106. Plaintiffs could, however, enforce FICA's reporting requirement because it is the reporting of income that triggers benefits, and losing benefits is an injury under *Lujan*. *Id.* Whether the employer in *Calderon* made FICA payments on the plaintiffs' behalf had no bearing on the plaintiffs' entitlement to benefits. *Id.* "[T]he plaintiff's real interest lies in ensuring that the [employer] make the proper reports of their income." *Id.*

*Coward*, 2011 U.S. Dist. LEXIS 74543, at *3-4.

73.     The case at bar is somewhat different from *Coward* inasmuch as Defendants actually underpaid Plaintiff and other employees rather than merely misreporting their income. But this distinction has no bearing on the question of Article III standing, since it is still the case that "it is the reporting of income that triggers benefits, and losing benefits is an injury." *Id.* Plaintiff and Class Members lost benefits by virtue of how Defendants failed to report their income, and how Defendants failed to report employees' income was the direct outcome of the inaccuracies in employees' wage statements. That is why "Plaintiffs have standing to enforce the statutory reporting requirements" imposed by the WTPA. *Calderon v. Witvoet*, 999 F.2d 1101, 1106 (7th Cir. 1993).

74.     Whether or not any Class Members are presently eligible for social security benefits is legally immaterial. *See id.* ("Although only citizens and aliens residing in the United States may receive benefits, 42 U.S.C. § 402(t), plaintiffs may eventually fulfill this requirement and therefore are entitled to keep their Social Security accounts accurate.").

75.     The *Calderon* court stressed that an employee's interest in ensuring that an employer properly report the employee's income is amplified by the difficulty of persuading the government to correct errors:

The practical difficulty is that eligibility for Social Security benefits presumptively depends on reports that employers send to the government. A worker who seeks credit for unreported income bears the burden of proof, 42 U.S.C. § 405(c)(3), (4), which will be hard to carry if the employer has not furnished the customary documentation. The government believes employers who report earnings, because these reports are costly to make--they entail paying a substantial tax. The government tends not to believe undocumented claims by employees, because these claims are essentially costless yet could establish entitlement to large pensions or disability benefits.

All of this means that the plaintiffs' real interest lies in ensuring that the Witvoets make the proper reports of their income. *Id.*

*Calderon v. Witvoet*, 999 F.2d 1101, 1106 (7th Cir. 1993)

76.    Here, the problem is not merely challenging but insurmountable. Plaintiff and Class Members cannot even attempt to have their earnings report corrected because Defendants failed to report their actual wages to the IRS. Because "[u]nder the Social Security statute, entitlement depends on 'the total of the wages paid . . . to an individual in a calendar year,'" Plaintiff was irreversibly injured with respect to his social security benefits as Defendants failed to send her W-2 to the IRS. *Coward*, 2011 U.S. Dist. LEXIS 74543, at *3 (N.D. Ill. July 8, 2011) (quoting 42 U.S.C. § 413(a)(2)(A)(ii)).

77.    Defendants knowingly and willfully operated their business with a policy of failing to provide Plaintiff, FLSA Collective Plaintiffs, and Class Members with wage notices and accurate wage statements, in violation of the NYLL.

78.    Plaintiff retained Lee Litigation Group, PLLC to represent Plaintiff, FLSA Collective Plaintiffs, and Class Members in this litigation, and has agreed to pay the firm a reasonable fee for its services.

## STATEMENT OF CLAIM

## COUNT I

## VIOLATION OF THE FAIR LABOR STANDARDS ACT

79.     Plaintiff realleges and incorporates all the above allegations as if fully set forth herein.

80.     At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiff and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

81.     At all relevant times, Defendants employed Plaintiff and FLSA Collective Plaintiffs within the meaning of the FLSA.

82.     At all relevant times, Defendants had a policy and practice of failing to pay overtime compensation at the statutory rate of one and one-half times the regular rate of pay to Plaintiff and FLSA Collective Plaintiffs for their hours worked in excess of forty (40) hours per workweek.

83.     At all relevant times, Defendants had a policy and practice of failing to pay wages for all hours worked.

84.     Defendants knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by their failure to compensate Plaintiff and FLSA Collective Plaintiffs the proper overtime premium of one and one-half times the regular rate of pay for their hours worked in excess of forty (40) hours per week when Defendants knew or should have known such was due.

85.     Defendants failed to properly disclose or apprise Plaintiff and FLSA Collective Plaintiffs of their rights under the FLSA.

86.     As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiff and FLSA Collective Plaintiffs are entitled to liquidated (i.e., double) damages pursuant to the FLSA.

87.     Due to the intentional, willful, and unlawful acts of Defendants, Plaintiff and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid overtime compensation and unpaid wages, plus an equal amount as liquidated damages.

88.     Records, if any, concerning the number of hours worked by Plaintiff and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiff and FLSA Collective Plaintiffs are in the possession and custody of Defendants. Plaintiff intends to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

89.     Plaintiff and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216(b).

## COUNT II

## VIOLATION OF THE NEW YORK LABOR LAW

90.     Plaintiff realleges and incorporates all the above allegations as if fully set forth herein.

91.     At all relevant times, Plaintiff and Class Members were employed by Defendants within the meaning of the NYLL §§ 2 and 651.

92.     At all relevant times, Defendants failed to compensate Plaintiff and Class Members their proper wages at the prevailing minimum wage rates.

93.     Defendants willfully violated Plaintiff's and Class Members' rights by failing to pay them their proper overtime compensation at rates of not less than one and one-half times their regular rates of pay for each hour worked in excess of forty (40) hours in a workweek.

94.     Defendants willfully violated Plaintiff's and Class Members' rights by failing to compensate them wages for all hours worked.

95.     Defendants willfully violated Plaintiff's and Class Members' rights by practicing a policy of timeshaving, in violation of the NYLL.

96.     Defendants willfully violated Plaintiff's and Class Members' rights by practicing a policy of fixed salary, in violation of the NYLL.

97.     Defendants willfully violated Plaintiff's and Class Members' rights by practicing a policy of improper rounding, in violation of the NYLL.

98.     Defendants willfully violated Plaintiff's and Class Members' rights by failing to pay them any spread of hours premiums for all their shifts worked in excess of ten (10) hours.

99.     Defendants knowingly and willfully failed to provide proper wage and hour notices to Plaintiffs and Class Members, as required by the NYLL § 195(1).

100.    Defendants knowingly and willfully failed to provide proper wage statements to Plaintiffs and Class Members with every wage payment, as required by the NYLL § 195(3).

101.    Due to Defendants' NYLL violations, Plaintiff and Class Members are entitled to recover from Defendants their unpaid wages, unpaid overtime compensation, unpaid minimum wages, unpaid spread of hour premiums, statutory penalties, liquidated damages, reasonable attorneys' fees and costs and disbursements of the action, pursuant to the NYLL.

**<u>PRAYER FOR RELIEF</u>**

**WHEREFORE**, Plaintiff, on behalf of himself, FLSA Collective Plaintiffs and Class

Members, respectfully requests that this Court grant the following relief:

a.     A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the NYLL;

b.     An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

c.     An award of unpaid wages due under the FLSA;

d.     An award of unpaid wages, including minimum wages, due under the NYLL;

e.     An award of unpaid overtime compensation due under the FLSA and the NYLL;

f.     An award of unpaid spread of hours premiums due under the NYLL;

g.     An award of statutory penalties as a result of Defendants' failure to comply with the NYLL wage notice and wage statement requirements;

h.     An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay proper wages pursuant to the FLSA;

i.     An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay proper wages pursuant to the NYLL;

j.     An award of pre-judgment and post-judgment interests, costs and expenses of this action together with reasonable attorneys' fees, expert fees, and statutory penalties;

k.     Designation of Plaintiff as Representative of the FLSA Collective Plaintiffs;

l.     Designation of this action as a class action pursuant to F.R.C.P. 23;

m.     Designation of Plaintiff as Representative of the Class; and

n.     Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.


December 18, 2024                               Respectfully submitted,

                                      By:    */s/ C.K. Lee*
                                             C.K. Lee, Esq.
                                             **LEE LITIGATION GROUP, PLLC**
                                             C.K. Lee (CL 4086)
                                             Anne Seelig (AS 3976)
                                             148 West 24th Street, Eighth Floor
                                             New York, New York 10011
                                             Tel.: (212) 465-1188
                                             Fax: (212) 465-1181
                                             *Attorneys for Plaintiff,*
                                             *FLSA Collective Plaintiffs,*
                                             *and the Class*